**UNITED STATES of America, Appellee,**

v.

**Thomas George POPE, Appellant.**

**No. 75–2504.**

United States Court of Appeals, Ninth Circuit.

Jan. 16, 1976.

Ann Bowen (argued), Tucson, Ariz., for appellant.

Joseph P. Covington, Asst. U. S. Atty. (argued), Tucson, Ariz., for appellee.

Before DUNIWAY, ELY, and CHOY, Circuit Judges.

PER CURIAM:

Thomas Pope appeals his conviction for armed robbery of a savings and loan association. 18 U.S.C. § 2113(a), (d). We reverse.

At trial the prosecution's key witness was Brett Elliott, an alleged participant in the robbery. Elliott's testimony disclosed that he had planned the robbery with appellant and Edward Pope, appellant's brother. Elliott and Edward held up two tellers in a savings and loan business at gunpoint, while appellant waited in a "switch car" at a pre-arranged rendezvous point. After the holdup, Elliott and Edward drove out to meet appellant, ditched the get-away car, and rode off with appellant driving.

On April 1, 1975, Elliott was permitted to plead guilty to the lesser included of-fense of robbery of a savings and loan without the use of a gun. 18 U.S.C. § 2113(a). Elliott testified against Edward Pope on April 1 and 2, 1975. On April 9, 1975, Elliott testified before the Federal Grand Jury, implicating appellant in the robbery. Elliott was sentenced on April 22, 1975, to serve only 150 days out of a 10-year suspended sentence. During direct examination at appellant's trial on June 3, 1975, Elliott was asked about his guilty plea:

"Q. Was any kind of an agreement reached between you and the United States Attorney's Office in regards to getting you to plead guilty?

A. No.

Q. Was there any kind of understanding at all with respect to your pleading guilty?

A. No."

The Government's attorney emphasized this alleged absence of an agreement between Elliott and the prosecution in his rebuttal argument to the jury:

"Ladies and gentlemen, only one thing that Mrs. Bowen [counsel for defendant] just cannot answer and that is why does Elliott, Brett Elliott, come in and lie to you . . .? What motive? . . . No reason at all.

"Brett Elliott testified at the grand jury before he got sentenced. What possible benefit could he get out of that? Then he gets sentenced and admittedly a light sentence. So why does he come in here today? What possible gain? Does he just want to do us a favor and lie? Does he just want to stick Tom Pope in jail? Is that the kind of guy you think he is?"

Since the trial in this case we have expanded the record to include an affidavit from Elliott's defense attorney and a counter-affidavit from the Assistant United States Attorney who prosecuted the case against appellant. Both affidavits disclose that Elliott entered into a plea bargain on April 1, 1975, whereby Elliott agreed to testify against Edward Pope and the Government agreed to permit Elliott to plead guilty to the lesser included offense.

**114**

It is inconsistent with the rudimentary demands of a fair trial for the prosecuting attorney to fail to disclose to the court that a material prosecution witness has had the benefit of a plea bargain. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). This is especially true when the prosecuting attorney fails to correct false testimony regarding the existence of such an agreement. *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

Here, the Government's only answer is that the agreement in the present case related to testimony against someone other than appellant. This is a feeble excuse. Even assuming that the agreement was reached only in respect to appellant's brother, it is inconceivable that both Elliott and the prosecution did not know that Elliott's incriminating testimony would, in all reasonable probability, be required for use against the appellant. It was only eight days between the time Elliott made the agreement and the time he testified against appellant before the Grand Jury. Elliott then knew that sentencing in his own case was imminent. It stretches credulity that he would have believed that he could refuse to incriminate the appellant before the Grand Jury without jeopardizing his hopes for a light sentence. After appellant was indicted, Elliott could not recant his testimony without risking a perjury charge or resistance by the Government to any favorable considerations in respect to Elliott's future suspended sentence and probation. Thus, evidence of the plea bargain could have been a significant factor in assessing the credibility of the witness.

Nor can the prosecution's failure to disclose the plea bargain be passed off as harmless error. Elliott was the Government's key witness, and without his incriminating testimony, there is a strong likelihood that appellant would have been acquitted, especially of the more severe charge against him. It is hardly deniable that evidence reflecting so palpably against the credibility of the prosecution's principal witness might have altered the result.

The same government attorney who prosecuted the appellant also negotiated the plea bargain with Elliott. The prosecutor knew that Elliott's testimony that there was no plea bargain was a lie. He knew this, too, when he argued to the jury in summation that there was "no reason at all" for the witness to lie on the witness stand.

In fairness to the prosecutor, it should be noted that when Elliott swore to his falsehood, the prosecutor asked other questions from which it appears that the prosecutor was endeavoring to elicit the truth. But when it became apparent that Elliott would persevere in his falsification, to appellant's prejudice, we think fairness then required that the prosecutor himself advise the judge and jury of the true fact. The less candid choice was not consistent with the integrity demanded of the Government.

Appellant raises several other contentions, but, since there must be a new trial, we need not reach those contentions.

Reversed and remanded.